**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TASHA SANFORD-SPENCER : | |
| : | |
| Plaintiff : | |
| v. : | |
| : | Civil Action No. _____ |
| THE SCHOOL DISTRICT OF : | |
| PHILADELPHIA : | |
| : | |
| and : | |
| : | |
| SEAN CONLEY (individually) : | |
| : | |
| and : | |
| : | |
| KWAND LANG (individually) : | |
| : | |
| Defendants : | |

## CIVIL COMPLAINT

Plaintiff, Tasha Sanford-Spencer, by and through her attorneys, The Derek Smith Law Group, PLLC, hereby brings this civil action pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* ("Title VII")*,* the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et. seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO") § 9-1101 *et seq.* of the Philadelphia Code, and seeks relief from discrimination, harassment, disparate treatment, hostile work environment, and retaliation related to Plaintiff's employment with Defendants, The School District of Philadelphia, Sean Conley (individually), and Kwand Lang (individually). Plaintiff alleges and avers in support thereof:

**Parties**

1. Plaintiff, Tasha Sanford-Spencer (hereinafter referred to as "Plaintiff" or "Ms. Sanford-Spencer") is an adult female individual who resided at 638 Brill Street, Philadelphia, PA 19102.

2. Defendant, The School District of Philadelphia (hereinafter referred to as "Defendant SDP") is a public-school district existing under the laws of the Commonwealth of Pennsylvania with a principal office located at 440 North Broad Street, Philadelphia, PA 19130.

3. Defendant, Sean Conley (hereinafter referred to as "Defendant Conley") was and is still employed by Defendant SDP as an Assistant Superintendent.

4. At all times material, Defendant Conley maintained supervisory authority over Plaintiff.

5. Defendant Kwand Lang (hereinafter referred to as "Defendant Lang") was and is still employed by Defendant SDP as a Principal at Spruance School

6. At all times material, Defendants were the joint/sole employers of Plaintiff.

**Material Facts**

7. On or around July 6, 2020, Plaintiff filed a Charge of Discrimination (EEOC No. 530-2020-02786) with the Equal Employment Opportunity Commission ("EEOC") and dual filed with the Philadelphia Commission on Human Relations ("PCHR").

8. Plaintiff's original charge was filed against Defendant SDP while she was employed as the Assistant Principal for Northeast Highschool.

9. During the EEOC's investigation of said charge, Plaintiff was transferred from Northeast Highschool to James J. Sullivan School in direct retaliation for her previously filed Charge of Discrimination.

10. At all times material, Plaintiff was employed by Defendant SDP at the James J. Sullivan School (hereinafter referred to as "Sullivan" or "Sullivan School") as an Assistant Principal.

11. On or around January 2022, Defendant SDP's Principal Tara Brown, stepped down from her position. Plaintiff subsequently began working as the interim Vice Principal and Principal of Sullivan school.

12. Plaintiff applied for the official position of Principal at Defendant SDP when the position was posted.

13. Despite her timely application, Plaintiff was only made aware of Selection Day (which is a mandatory interview process any Principal candidate must go through) one business day before her scheduled selection day, having been told on Friday evening February 26, 2021, that she was to go through her selection day on Tuesday, March 1, 2021.

14. Thus, Plaintiff was given limited time to prepare for a lengthy interview and application process for a permanent principal position.

15. Upon information and belief, at least two other applicants were provided with more than one day notice of their interviews and evaluations.

16. Regardless of the short notice, Plaintiff prepared and presented for Selection Day and was told by numerous staff members and peers that she executed her interview flawlessly.

17. However, on or around March 1, Respondents informed Plaintiff that she did not make it past the first round of the Selection Day process.

18. This revelation shocked Plaintiff, as she was certainly the most qualified for the position as Principal and was already serving as interim Principal.

19. In fact, Plaintiff was assigned a Coach named Chuanika Sanders, as she was a first year Principal with Respondents. Coach Sanders was one of the panel members for Selection Day.

20. Following Selection Day Coach Sanders congratulated Plaintiff for making it through Selection Day.

21. Plaintiff informed Coach Sanders that she was not selected.

22. Coach Sanders, who had been on the Selection Day panel was shocked because Plaintiff was on the list as having passed the last time Coach Sanders had seen the list.

23. Coach Sanders even told Plaintiff that up until March 14, 2021, Plaintiff was still in the running for the official title of Principal.

24. Around this time, Defendants were specifically seeking out information about Plaintiff that would harm her character.

25. By means of example, Defendant (in particular Defendant Conley) began labeling Plaintiff as "aggressive" and "hostile." Upon information and belief, Defendants labeled Plaintiff as such in retaliation for her Charge of Discrimination against Defendants.

26. In the meantime, Coach Sanders asked her supervisor Michael Farrell why Plaintiff was told she did not make it through selection day as it was her understanding that Plaintiff met the appropriate criteria to continue the application/hiring process.

27. Coach Sanders had access to the list the panel had decided upon and Plaintiff's name was on the list.

28. Coach Sanders received no reply from Mr. Farrell but shortly thereafter Plaintiff's name was removed from the list.

29. Simultaneously, Plaintiff contacted Defendant Conley asking why her Coach was saying she made it through Selection Day but she was told she had not.

30. From there Defendant Conley continued to delay providing Plaintiff with a direct answer.

31. Defendant Conley told her to speak with the Head of Talent, Teresa Rita. Ms. Rita told Plaintiff there was nothing to be done if she did not pass Selection Day.

32. Plaintiff went through the end of the school year uncertain about her placement for the next year.

33. Further, Plaintiff was forced to assist with training her replacement.

34. Adding insult to injury, the date Plaintiff was scheduled to move her office was changed, resulting in Plaintiff enduring embarrassing emails from Defendants.

35. Further, the behavior of Defendant s towards Plaintiff following selection day was so poor that a CASA (Commonwealth Association of School Administration) Representative that worked within the school replied all to an email chain to call out the flagrant disrespect being shown to Plaintiff. Plaintiff was publicly disrespected by Defendant s, both to employees and non-employees of Defendant s.

36. This behavior continued throughout the summer and into the beginning of the 2022-2023 school year.

37. Ultimately, Plaintiff was assigned to Spruance School as a Vice Principal.

38. This was a less desirable assignment as it was not a principalship, among several other reasons.

39. Shortly following her placement at Spruance School, the School's Principal, Kwand Lang, began making inappropriate and pervasive comments towards Plaintiff.

40. By means of example and in no way an exhaustive list, Defendant Lang referred to Plaintiff as the "baddest bitch."

41. Upon information and belief, Defendant Lang did not refer to other similarly situated employees as a "bad bitch."

42. On more than one occasion, Defendant Lang called Plaintiff a "baby" in reference to her age.

43. On at least one occasion Defendant Lang subjected Plaintiff to inappropriate and unjustified write-ups as well as other unwarranted discipline.

44. This behavior was out of the ordinary as Plaintiff has seldom been subjected to such treatment by other principals in her tenure with Defendants.

45. Defendants reasoning for failing to promote Plaintiff is pretextual.

46. Defendants failed to promote Plaintiff due to her race/color and/or in retaliation for her complaints of harassment and/or discrimination.

47. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

49. That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

50. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants jointly and severally.

51. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

52. Plaintiff claims that Defendants unlawfully discriminated against Plaintiff because of her race, color, gender, and because she opposed the unlawful conduct of Defendants related to the above protected classes.

53. Defendant's failure to promote Plaintiff is in direct retaliation for Plaintiff engaging in the protected activity of filing an EEOC Charge of Discrimination.

54. Plaintiff further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff's position as a result of the unlawful discrimination and retaliation.

55. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

56. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

57. Plaintiff claims alternatively that she is an Independent Contractor and makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed and breached its duty to Plaintiff to prevent the harassment, discrimination, and retaliation and is therefore liable for negligence.

58. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**Disparate Treatment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*.**
(*Plaintiff v. Defendant School District of Philadelphia*)

59. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

60. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

    a. "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

61. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d) further provides that "it shall be an unlawful employment practice for an employer… controlling… training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide training."

62. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to their compensation, terms, conditions, training, and privileges of employment because of their race.

63. Defendants subjected Plaintiff to adverse tangible employment actions – defined as significant changes in Plaintiff's employment status, discipline, denial of training, and failure to promote.

64. At all times material, Plaintiff was and is an African American woman.

65. At all times material, Defendants had knowledge of Plaintiff's race.

66. At all times material, Defendants SDP, Conley, and Lang held supervisory authority over Plaintiff with respect to her employment.

**COUNT II**
**Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.***
**(*Plaintiff v. Defendant School District of Philadelphia*)**

67. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

68. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

    b. "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

69. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

70. Defendants Conley and Lang, in their capacity as Plaintiff's supervisors, intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of Plaintiff's race.

71. Defendant SDP delegated to Defendants Conley and Lang the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

72. At all times material, Defendants' intentional, discrimination on the basis of Plaintiff's race was not welcomed by Plaintiff.

73. At all times material, the intentional, discrimination by Defendants on the basis of Plaintiff's race was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

74. At all times material, Plaintiff believed her work environment to be hostile or abusive as a result of Defendants' discriminatory conduct.

75. The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

76. Defendant SDP provided a futile avenue for complaint.

77. Defendant SDP retaliated against Plaintiff for her complaints.

78. Defendant SDP acted upon a continuing course of conduct.

79. Defendant SDP's unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

80. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**Unlawful Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*.**
(*Plaintiff v. Defendant School District of Philadelphia*)

81. Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

82. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

83. As alleged herein, Plaintiff engaged in protected activity under Title VII including, but not limited to raising formal and informal complaints opposing Defendants' discriminatory employment practices.

84. At all times material, Plaintiff acted under a good faith belief that her right to be free from unlawful discrimination in the workplace was violated.

85. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

86. Plaintiff's protected activity was the motivating and/or determinative factor in the Defendants' decision to take materially adverse action against Plaintiff.

87. Plaintiff's protected activity was the but-for cause of the Defendants' decision to take materially adverse action against Plaintiff.

88. Defendants acted upon a continuing course of conduct.

89. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

90. Defendants' action to take materially adverse action against Plaintiff in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

91. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental

anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT IV
### Disparate Treatment and Hostile Work Environment in Violation of Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955, *et. seq.*
*(Plaintiff v. Defendant School District of Philadelphia)*

92. Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

93. The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

    (b) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or impendent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the service required.

94. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race.

95. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of PHRA § 955.

96. Defendant SDP is an employer under the Pennsylvania Human Relations Act (PHRA) as it employs citizens of the Commonwealth of Pennsylvania, and also because Defendant resides in the Commonwealth.

97. Defendants Conley and Lang are supervisors and/or managers employed by Defendant SDP who compelled, coerced, and/or otherwise caused the violations of the Act alleged herein.

98. Plaintiff is entitled to the protections of the PHRA as she is an employee who is a member of a protected class by virtue of her race.

99. Defendants subjected Plaintiff to a harassing, hostile work environment, and disparately treated Plaintiff based on her membership to a protected class.

100. As a direct and proximate result of Defendants' discrimination, harassment, and retaliation, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out of pocket expenses, emotional damages, pain and suffering, alienation, loss of reputation, and other similar damages and harms, all to Plaintiff's great detriment.

101. Plaintiff seeks attorney's fees pursuant to the PHRA.

102. Alternatively, Defendants' actions were motivated by the foregoing discriminatory animus towards Plaintiff. Therefore, Plaintiff is entitled to attorney's fees under the mixed-motive theory of liability.

103. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights under PHRA.

**COUNT IV**
**Retaliation in Violation of**
**Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955, *et. seq.***
*(Plaintiff v. Defendant School District of Philadelphia)*

104. Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

105. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this Act, or because such individual has made a civil complaint, testified or assisted, in any manner, in any investigation proceeding or hearing under this act."

106. Defendants engaged in unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

107. Defendants unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights under the PHRA.

108. Plaintiff seeks attorney's fees under the PHRA.

109. Alternatively, Defendants' actions were motivated by the foregoing discriminatory animus towards Plaintiff. Therefore, Plaintiff is entitled to attorney's fees under the mixed-motive theory of liability.

110. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights under PHRA.

## COUNT V
### Aiding and Abetting
### Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et. seq.*
### (*Plaintiff v. All Defendants*)

3. Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

4. PHRA § 955(e) provides that it shall be unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

5. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955, the discriminatory conduct.

6. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights under PHRA.

7. Plaintiff seeks attorney's fees under the Pennsylvania Human Relations Act.

8. Alternatively, Defendants' actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed-motive theory of liability.

9. As a result of Defendants' unlawful actions, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT VI
### Discrimination in Violation of
### Philadelphia Fair Practices Ordinance (PFPO), § 9-1103
### (*Plaintiff v. All Defendants*)

111. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

112. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

113. Defendants engaged in unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiffs because of Plaintiffs' race and color; and by subjecting Plaintiff to a hostile work environment.

114. Defendants acted with intent to discriminate.

115. Defendants cannot show any legitimate nondiscriminatory reason for their actions against Plaintiffs and any reasons proffered by Defendants are pretextual.

116. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights under PFPO.

117. As a result, Plaintiff has suffered damages.

### COUNT VII
### Discrimination in Violation of
### Philadelphia Fair Practices Ordinance (PFPO), § 9-1103
### (*Plaintiff v. All Defendants*)

118. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

119. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she, or it has complied with the provisions of this Chapter, exercised his, her, or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified, or assisted in any manner in any investigation, proceeding or hearing hereunder."

120. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against Plaintiff because of plaintiff's opposition to the unlawful employment practices of their employer.

121. Defendants cannot show any legitimate nondiscriminatory reason for their actions against Plaintiffs and any reasons proffered by Defendants are pretextual.

122. Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights under PFPO.

123. As a result, Plaintiff has suffered damages.

## COUNT VIII
### Aiding and Abetting in Violation of
### Philadelphia Fair Practices Ordinance (PFPO), § 9-1103
(*Plaintiff v. All Defendants*)

124. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

125. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice." Case 2:19-cv-03326-KSM Document 49 Filed 05/21/20 Page 109 of 113 110 516.

126. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

127. As a result, Plaintiff has suffered damages.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

Date: October 30, 2023　　　　　　　　　　　　**DEREK SMITH LAW GROUP, PLLC**

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Timothy J. Prol, Esq.*
　　　　　　　　　　　　　　　　　　　　　　Timothy J. Prol, Esq.
　　　　　　　　　　　　　　　　　　　　　　1835 Market Street, Suite 2950
　　　　　　　　　　　　　　　　　　　　　　Philadelphia, Pennsylvania 19103
　　　　　　　　　　　　　　　　　　　　　　Phone: (215) 391-4790
　　　　　　　　　　　　　　　　　　　　　　tim@dereksmithlaw.com
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff